## ADAM C. KING V. PAUL BREMOND AND ANOTHER.

When the pleadings and evidence support the verdict and judgment, it will not be reversed merely because the basis upon which the jury estimated the amount may not correspond with the true issues, and because the judge has submitted to them an improper test or measure of liability, whereby to regulate their finding; provided that, from the pleadings and evidence, the amount of the judgment rendered is clearly right.

See the facts of this case for circumstances warranting the application of this rule; from which it appears, that upon the basis furnished by the judge's charge, the jury, in estimating the plaintiffs' damages for non-delivery of leather by the defendant, found a verdict for the plaintiffs greatly exceeding the indebtedness shown to be due by the petition on the acknowledgment thereof, which was the ground of action, (and not the non-delivery aforesaid,) and it appearing that the true cause of action sued on was sustained by the proof under the pleadings, and the plaintiffs remitting the excess beyond what was clearly due upon the instrument sued on, and which was in evidence, this court remarked, in sustaining the judgment after the entry of the remittitur, that the jury might have properly found a verdict for the money due by defendant to the plaintiffs (under proper instructions); the plaintiffs having remitted so much of the amount recovered as exceeds the amount which they might have recovered upon the pleadings and evidence, the justice of the case has been attained without any violation of law.

ERROR from Houston. Tried below before Hon. R. A. Reeves.

Paul Bremond and W. A. Van Alstyne, partners under the style and firm of Bremond & Van Alstyne, brought this suit against Adam C. King on the 20th day of July, 1854, for damages for defendant's failure to comply with and perform a certain written contract set out in the petition, claiming ten thousand dollars as damages for the defendant's aforesaid failure. The contract referred to was made between the plaintiffs as partners as aforesaid on the one part and the defendant King on the other, on the 20th day of July, 1852; and stipulated that King, as one of the partners of the late firm of King & Smith, being indebted to Bremond and Van Alstyne upon a settlement on that day made between said firms, in the sum of six thousand seven hundred dollars; therefore, in order to pay said sum of money said King, in the language of the contract, "contracts, agrees, and

binds himself to deliver to said Bremond & Van Alstyne in the town of Crockett, county of Houston, on the first day of every month, commencing on the first day of August next A. D. 1851, twelve hundred pounds of black harness leather, until he shall have delivered to them the amount of twenty-five thousand pounds of said leather. And said Bremond & Van Alstyne, on their part, contract, agree, and bind themselves, that should said King deliver to them said amount of leather according to the terms of this contract, then, as soon as he shall have completed the delivery of said twenty-five thousand pounds, then they will release him from all liability for said before mentioned sum of money .due from said King & Smith to said Bremond & Van Alstyne; it being understood between the parties, that said leather shall be good merchantable harness leather."

At the Fall Term of the court, 1854, the plaintiffs amended their petition, alleging that the defendant had heretofore failed and refused, and still failed and refused to pay to petitioners said sum of six thousand seven hundred dollars, which he acknowledges in said agreement to owe and be indebted to plaintiffs, and pray judgment for such damages as they have sustained by defendant's failure to pay said sum of money.

The plaintiffs filed other amendments to their petition, showing the terms of dissolution of partnership between King and Smith; and that in consideration of the arrangement by Smith with the plaintiffs of a certain portion of the indebtedness of King and Smith to the plaintiffs, the plaintiffs released Smith from liability for the residue of the debt, and which King assumed and agreed to pay; and that the amount and terms of payment whereof, the plaintiffs allege, the written agreement sued on witnesses; and that for the foregoing considerations above named, King was authorized by Smith to settle and liquidate the business of the firm. The defendant excepted to the sufficiency of the petition, and amendments thereof. The exceptions were overruled. The defendant pleaded a general denial of the plaintiffs' allegations, and also a special defence, alleging that at the date of the settlement between said parties, when the agreement sued on was executed, the plaintiffs were in fact indebted to the firm of King & Smith, on

King v. Bremond.

account of certain transactions before said settlement between them, growing out of the purchase by King & Smith of cotton to be shipped to the plaintiffs at the prices agreed between the parties to be paid therefor; with which at the prices paid for it, King & Smith were to be credited. Defendant alleged the purchase of fifteen thousand dollars worth of cotton for, and its shipment to, and receipt by the plaintiffs in accordance with said contract; and that the plaintiffs failed to credit King & Smith for the amount paid for the same, or to render them any account. That King & Smith paid twelve cents per pound for said cotton, and were credited only with the proceeds of sales of fifty-two bales at six cents per pound. The defendant alleged that a part of the supposed indebtedness to plaintiff embraces one thousand dollars charged as interest, to which defendant objects, &c.; and that at the time of the dissolution between himself and Smith, they paid to plaintiffs in notes, accounts, goods, wares and merchandize, moneys, and otherwise, thirteen or fourteen thousand dollars; and that at the time of making the agreement which is sued on, the plaintiffs fraudulently represented to the defendant that the amount therein stated to be due them was correct; that they failed to exhibit to him any account current or exhibit, to show the indebtedness of King & Smith, and promised that in case there should be any mistakes, they would correct the same; and thereby, relying upon said representations, he was induced to sign said instrument. The plaintiffs excepted to the sufficiency of the answer; which exception was overruled.

On the trial the plaintiffs read in evidence the agreement sued on, and an instrument of writing bearing the same date with the aforesaid agreement, signed by King & Smith respectively, dissolving, by mutual consent, their copartnership; stating that the business would be continued by King, who alone was authorized to settle the matters of the old firm. They introduced also a receipt of the same date, signed by themselves, to the effect that Smith had on that day executed to them two notes amounting to eighteen hundred dollars, in consideration of which, they (Bremond & Van Alstyne) agreed to release him from any debt which was due them from the firm of King & Smith, and to look to

King alone for the amount of their debt. The plaintiffs admitted payments in leather on the contracts described in petition, amounting to two thousand one hundred and seventeen pounds. Plaintiffs proved that the defendant carried on a mercantile saddlery and tannery business in the years 1850, 1851, and during the early part of 1852, and that he continued the saddlery business after the dissolution of the partnership of King & Smith; they also proved that leather was worth at Crockett, Texas, from twenty-eight to forty-five cents per pound, from the date of the agreement sued on, up to the time of trial, March the 4th, 1858.

The defendant proved by the former book-keeper of King & Smith, that Van Alstyne had stated to him, that the plaintiffs had furnished King and Smith with twenty-five hundred dollars with which to buy cotton for them; and that they were to allow King & Smith the price given by them for the cotton bought with the money so furnished. He also stated that most of the cotton was purchased at twelve cents per pound, and that the price fell shortly afterwards to six cents per pound. By another witness, the defendant proved that King & Smith purchased in the spring of 1851, about seventy bales of cotton at twelve cents per pound, and that shortly afterwards there was a considerable decline in cotton. The defendant proved by the books of original entries of King & Smith, that about the time of the dissolution of the firm, the plaintiffs received the goods, &c., of said copartnership amounting to about fifteen hundred dollars. He also introduced and read as evidence said letters written to King & Smith, from time to time, advising them of the rise and fall in the cotton market; recommending them to purchase and ship as much cotton as possible; and in the early part of the year 1851, requesting them to purchase cotton for their account at a price not to exceed twelve and a half cents per pound, ship to a house named in Galveston, and draw on them (the plaintiffs) for the money.

The details of the correspondence need not be stated more fully, under the finding of the jury and the charge of the court, as the defendant offered no testimony to repel the presumption that all matters of account between the parties, in relation to these transactions, were adjusted when the settlement was made July 20th,

1852; nor was there any other evidence than has been recited, to establish the allegation of fraudulent misrepresentations of the plaintiffs to induce the execution of the contract sued on.

The court instructed the jury, that if the defendant failed to comply with the written contract, by delivering the leather at the time and place agreed upon, the plaintiff would be entitled to recover its value at the place where it was required to be delivered; and the measure of compensation would be, the highest market value of the leather at the place of delivery, at any time between the breach of the contract and the time of trial. They were instructed to ascertain from the evidence the credits to which defendant was entitled, and apply the same as of the date of the payments, and render a verdict for the plaintiff less the amount so paid as above directed. That if it appeared there were open accounts and dealings between the parties prior to any written agreement between them, the presumption is that they were settled and adjusted at the time of making the written contract, and that it would be incumbent upon the defendant to remove by proof such presumption; and that if this had not been done, the plaintiff would be entitled to recover as directed in the former part of this charge.

The jury found a verdict for the plaintiffs for the sum of ten thousand two hundred and ninety-seven dollars and thirty-five cents, for which amount judgment was rendered against the defendant.

The plaintiffs entered a remittitur upon said judgment for the sum of seventeen hundred ninety-seven dollars and thirty-five cents.

The defendant filed a motion in arrest of the judgment, upon the following grounds:

Because plaintiff's petition shows no cause of action against the defendant in this, that the alleged failure to deliver the leather mentioned in the agreement, was made the gravamen of the complaint, whereas the legal effect of a delivery thereof in accordance with the agreement, constituted in fact merely a mode whereby the defendant's obligation to plaintiffs for the indebtedness of $6700 mentioned, might have been discharged; and therefore the non-delivery constitutes no substantive cause of action

41Y

against defendant, and the action should have been upon the obligation for the sum of money claimed by the plaintiffs to be due on account of said indebtedness.

Because, viewing the petition and its amendments as proceeding for the non-delivery of the leather, or as claiming alternatively the leather or said sum of money, the plaintiffs do not allege that the leather was of any value.

The defendant filed, also, a motion for a new trial, on the grounds, that the court erred in charging upon the issue of delivery or non-delivery of the leather, upon the assumption that the alleged non-delivery of the leather constituted plaintiffs' cause of action. Whereas, the petition sets forth as the cause of action the non-payment of the money acknowledged in the agreement to be due to the plaintiffs.

That the court erred in charging the jury to find the value of said leather, without any averment in the petition of the value of the same.

That the court erred in charging the jury on the law as to the measure of compensation for the non-delivery of said leather.

That the finding of the jury was excessive by more than $2000 beyond the amount of damages claimed in plaintiffs' petition; and was contrary to the law and evidence in the case.

The motions in arrest of judgment and for a new trial were overruled.

The plaintiff in error assigned as error, that the court erred in overruling defendant's general and special exceptions to plaintiffs' original and amended petitions; and in overruling defendant's motions for new trial and in arrest of judgment.

*Thos. J. Jennings* and *Wm. M. Taylor*, for the plaintiff in error.—The defendants in error sued plaintiff in error upon a written agreement signed by both of said parties, and made part of the petition of plaintiffs below. (We will designate the said parties here as they stood below.) This agreement (marked A) is the sole foundation of the action. It is, in substance, as follows: King acknowledges himself, as one of the partners of the late firm of King & Smith, indebted to the said B. & Van A.,

King v. Bremond.

upon a settlement, "this day" made between said firms, in the sum of six thousand and seven hundred dollars, and "in order to pay said sum of money," said King "hereby contracts and binds himself" to deliver to said B. & Van A. at, &c., on the first day of every month, commencing on the 1st of August next, (1852,) twelve hundred pounds of black harness leather, until the amount reaches to twenty-five thousand pounds, and B. & Van A. contract, agree and bind themselves that should said K. deliver to them said amount of leather according to the terms of "this" contract, then, so soon as he shall have completed said delivery, they will release him from all liability for said sum of money due, &c., as aforesaid; the leather to be good, &c. Plaintiffs declare in their original petition for the non-delivery of the leather, and nothing else, for which they pray judgment "for all such damages as they have sustained by wrongful failure," &c. The sole breach is charged to be in the failure to deliver the leather.

In an amended petition plaintiffs say that defendant has failed and refused to pay the said sum of $6700, acknowledged to be due, &c., and pray judgment as in the original petition, and for damages sustained by the failure to pay said money, &c. Plaintiffs filed three other amended petitions, presenting matters not now in issue as they seem only to be intended to fortify the acknowledgment of indebtedness by defendant in agreement "A," which is not now controverted. After the filing of the plaintiffs' first amended petition defendant's general and special exceptions to the petition were sustained, and hence the subsequent amendments of the petition, none of them, repeat the claim of first amended petition of the money for the acknowledged debt. None of them state the value of the leather or that it was of any value. Defendant, by general and special exceptions, insisted that the breach of his promise in agreement "A," to deliver the leather, constituted no cause of action. The court overruled defendant's exceptions to the petition as finally amended, and the jury rendered a verdict for plaintiffs, for $10,297, being the value of the leather in question at the highest price it was proved to have been worth from the maturity of agreement "A" up to the trial, being several

thousand dollars more than the amount of the acknowledged debt and interest thereon.

The presiding judge charged that the plaintiffs' cause of action was the breach of defendant's promise to deliver the leather, as stipulated in agreement "A," and laid down, (in his language,) "the measure of compensation" to be the rule above stated to have been followed by the jury. Defendant moved in arrest and for a new trial. By the former motion he insisted, as he had done in his overruled exceptions to the petition, 1st, that the promise to deliver said leather, declared upon in plaintiffs' petition as their cause or ground of action and upon which the plaintiffs proceeded at the trial and obtained the said verdict, is not a valid obligatory undertaking and constitutes no cause of action against defendant. 2. That plaintiffs' petition is radically defective in that it does not allege the value of said leather, or that it was of any value whatever.

The motion for a new trial insists, among other things, that the court erred in charging the jury, 1st, that the issue to be tried before them was upon the alleged non-delivery of said leather; that defendant's promise to deliver the same was a valid obligatory undertaking, and its breach constituted plaintiffs' cause of action. Whereas, as defendant insisted, if there was any cause of action against him set forth in plaintiffs' petition, it arose upon the acknowledgment of indebtedness for the sum of money in agreement "A" contained. 2. That the District Court erred in admitting evidence of the value of the leather without any allegation thereof in the petition.

The appellant, therefore, insists that the District Court erred, (by overruling defendant's general and special exceptions to the petition and the motions for a new trial, and in arrest of judgment,) 1st, in holding that the non-delivery of the leather as agreed by defendant in agreement "A" was a breach of a valid legal obligation and constituted a good cause of action; and, 2d, in allowing defendants in error to recover the value of said leather without any allegation thereof in the petition.

Was the promise of appellant to deliver the leather in agree-

ment " A " contained, a legal obligatory undertaking so as that its non-delivery constituted, in favor of defendants in error against plaintiffs in error, a good cause of action.

In entering upon the consideration of this question we suggest that the location of the acknowledgment of indebtedness in the same instrument with the promise to deliver the leather, ought to have no weight in determining the legal effect of the latter.

What difference can there be, in this respect, between a promissory note or a due bill, or an acknowledged account, on a separate piece of paper, constituting an independent evidence of indebtedness, and referred to in an agreement like the present, as the debt which might be discharged by force of the agreement, in specific articles, and the one here presented, in which the acknowledgment of the debt and the contingent provision for its discharge are both found in the same instrument?   In truth, the debt here in question is wholly independent of agreement " A," which only contains an acknowledgment furnishing evidence of its existence. And this is not the less true because the plaintiff in error acknowledges that he owed the debt as a member of a late firm.   That peculiarity might furnish ground for a question as to the binding force of the acknowledgment as the foundation of a separate proceeding, as this is, for its enforcement against the plaintiff in error alone.   But that question we are not now raising.

The acknowledgment of indebtedness, then, being no part of the undertaking to deliver the leather, does not constitute, in a legal sense, its consideration, but is only recited as a basis or reason for the separate and independent undertaking for its possible discharge by the "full, complete and timely delivery of the leather."   With these preliminary observations, we assume the position that, in the language of the law, the promise to deliver the leather on the part of plaintiff in error, and the stipulation on the part of defendants, that should that promise be precisely performed, they would discharge and release him from all liability for the acknowledged debt, amounts to nothing but "an accord executory," and that this of itself constitutes neither a cause of action nor a ground of defence.

The books are full of elementary treatises and adjudicated cases upon the general doctrine of "accord and satisfaction," but the discussion of the precise phase of principle here involved, so far as we have been able to discover, has taken but a limited range. There seems to be no controversy upon the proposition that a simple accord does not constitute a defence to an action on the original debt; and, in the language of Judge Marcy in the case of Russel v. Lytle, 6 Wend. Rep., 391, "the cases in which the question has been so often raised and decided that an accord executory could not be enforced, arose on pleas, as here, in bar of the original action." But a simple accord will be found to be equally unenforceable when declared upon as a ground of action by a plaintiff in an action for its non-performance. This doctrine, correlative to the well settled doctrine that an accord without satisfaction is not valid as a defence, has been so long and so entirely fixed, that we can find but few cases discussing it, or in any way adverting to it. And this, we conceive, arises from the obviously sound proposition that what is not good as a defence, is not good as a cause of action; and from the further consideration, that from the nature of things, "accords" must be much oftener presented in defence, in order to lay the ground for practical issues upon questions of "satisfaction." We think it not unfair to add, that naturally, it must have been early and easily settled, that a simple accord would not sustain an action because it was early held that an accord was of no force without satisfaction, and to state it with satisfaction, which alone could give it vitality, would of course be destructive to a plaintiff's right of action on it. We are not, however, without authority directly and pointedly settling the very question now under consideration. The leading case upon this point is that of Allen v. Harris, 1 Ld. Raymond, 122, (Mich. Term., 8 Will. 3.) In this case the defendant pleaded that the plaintiff, in consideration that the defendant at the special instance of the plaintiff, assumed to pay the plaintiff 20s., agreed to "discharge the defendant of this trover," &c., (the action was trover for a waistcoat,) and lays "mutual promises to perform." Plaintiff demurred. *Per curiam*: "If arbitrament be pleaded, with mutual promises to perform it, though the party has not performed

King v. Bremond.

his part who brings the action, yet he shall maintain his action, because an arbitrament is like a judgment, and the party may have his remedy upon it. But upon accord no remedy lies. And the books are so numerous that an accord ought to be executed, that it is now impossible to overthrow all the books." The next, and perhaps the most pointed case, is that of Lynn & others v. Bruce, 2 H. Black. Rep., 317, decided by the English Court of Com. Pl., in 1794. The case is thus stated: " A. declared that in consideration that he, at the request of B., had consented and agreed to accept and receive from B. a composition of so much in the pound upon a certain sum of money owing from B. to A., in full satisfaction and discharge of this debt, B. promised to pay the composition. This was not a good consideration to support an assumpsit against B., a mere accord not being a ground of action." Ld. C. J. Eyre, (in delivering the opinion of the court,) said, (p. 3191,) " This will be found to be a very clear case, when the nature of the objection is understood. The consideration of the promise is, as stated in this count, on an agreement to accept a composition in satisfaction of a debt. If this is an agreement which is binding and can be enforced, it is a good consideration. If it is not binding, and cannot be enforced, it is not a good consideration. It was settled in the case of Allen v. Harris, 1 Ld. Raym., 122, upon consideration of all the cases that, upon an accord, which this is, no remedy lies. It was said, (quoting what was said in the cited case about the contrary doctrine " overthrowing all the books, &c.") " But we think it was rightfully settled upon sound principles. *Interest reipublicæ ut sit finis litium,* &c. " Accord executed is satisfaction, accord executory is only substituting one cause of action in the room of another, which might go to any extent." "The cases in which the question has been raised, whether an accord executory could be enforced, and in which it has been so often determined that it could not, have been cases in which it has been pleaded in bar of the original action. But the reason given in three of the cases in 1 Roll Abr., tit., "Accord, &c.," is because the plaintiff has not any remedy for the whole, or where part has been performed, for that which is not performed, which goes directly to the gist of this action, &c."

"But an accord must be completely executed in all its parts before it can produce legal obligations or legal effects, &c." "It was argued that an accord executory in any part, is no bar because no remedy lies for it for the plaintiff; perhaps it would be a better way of putting the argument, to say, that no remedy lies for it for the plaintiff, because it is no bar. But put it either way, it concludes in support of the objection to the second count in the declaration, and consequently the judgment must be arrested." (Ib., 318–19.)

We have quoted thus extensively from this leading case, because the learned judge whose opinion we have copied, has presented, in a clear and forcible manner, all the positions and arguments which the interest of the plaintiff in error would have required us to endeavor to present. C. J. Eyre has long since argued our case for us, so far as this point is concerned, and placed us in a position both of principle and authority perfectly impregnable.

But a doctrine is to be found briefly stated in certain elementary works followed by some of the courts, (Parsons on Contracts, and Story on same title " accord and satisfaction,") which, if not traced to its source, and subjected to the test of principle, might mislead our footsteps in this inquiry, and, at least, has been productive of some confusion with the courts. It is that " an accord upon mutual promises is a valid and binding obligation." Its source is to be found in Comyn's Dig., title "Accord," B. 4. "Must be executed," 6 " unless in case of mutual promises." The words of the Digester are, 1, " So an accord with mutual promises to perform is good, though the thing be not performed at the time of the action; for the party has a remedy to compel the performance. (Ray., 450, 2 Jon., 158, 2.) "Yet the remedy ought to be such, that the party might have taken it upon the mutual promises at the time of the agreement." (R. 2, Jon., 168.) The authorities referred to in support of this position, are not accessible to us, but we are furnished with a key to this apparently mysterious departure from principle by the same author, in same title, letter C., " How it shall be pleaded:" 3, " Mutual promises."

1. " If he plead it as a mutual agreement, the defendant must show such an agreement upon which assumpsit is maintainable."

(R., 2, Jon., 158.) 2. And upon which an action is given at the time of the assumpsit." (R., 2, Jon., 163.) And the agreement was performed on the part of the defendant, (who claimed the benefit of it) as soon as could be before the action. R. Skin., 391."

But this doctrine of the validity of an accord with mutual promises of performance, has been much shaken, if it has not been entirely overturned, by the Supreme Court of Ohio in the case of Frost v. Johnson, (8 Hammond, 392,) in which Judge Grinke, in delivering the opinion of the court, characterises it as resting upon the single dictum of Comyns, and as being opposed to the general current of authorities. (Id., 396.) Besides the case already cited of Allen v. Harris, (1 Ld. Raymd., 122,) and Lynn *et al.* v. Bruce, (2 H. Bl., 317,) he refers, in support of this position, to Chitty on Contracts, 762, (note *u*,) in which the author refers to the cases in answer to Comyns, above cited, and in addition to James v. David, (5 T. R., 141,) where the court reiterates the doctrine that an accord without satisfaction is good neither as a defence nor a cause of action.

Mr. Chitty, *ubi sup.*, says : " If the accord or agreement that satisfaction should be rendered at a future day be not founded on a new consideration, and be not so far binding on the debtor as to afford a fresh right of action to the creditor for its non-performance, an action lies on the original demand, even before the time prescribed for rendering satisfaction." And, *e converso*, we may, with propriety, insist that if the creditor can sue upon the original demand where there is an agreement or accord executory at a future specified day, before that day, then it follows that the accord cannot be founded on a proper consideration and binding on the debtor. Now, what was there in the accord, in our case, to prevent the creditors from suing on the original demand, while the time of the accord was running ? Was there any stipulation by them to that effect, or if such a stipulation is to be inferred from the time given by the accord for performance, was there any, and if any, what consideration for such implied stipulation ? As we have already had occasion to observe, no consideration from or to either of these parties is to be found in the original debt, for if

that were the case here, the basis debt would furnish a consideration for the new and distinct promise to be found in every accord.

We are sustained in this position by the opinion of the Supreme Court of Vermont, in the case of Bates v. Starr, (2 Vt., 536,) where it is said : " A parol agreement between creditor and debtor, not founded upon any new consideration, that the former shall suspend a debt already due in money and receive payment for the same in future professional or official services of the latter, is not binding on the creditor, although the debtor may have extinguished part of the debt by service under the agreement, and is willing to extinguish the whole in the same manner ; but an action will lie at any time to recover the balance remaining unpaid," of the original debt, of course. (The Vermont Reports not being accessible, I must refer to abstract of this case, 1 U. S. Dig., p. 104, § 153.)

If such agreements, as we trust have been shown, are not binding on the creditor, they are not binding on the debtor, under what we take to be a legal axiom that contracts must bind both parties who contract with and against each other, or they can be binding on neither. Indeed, the head of law under which this claim is attempted to be held up, is that of " mutual promises,"— promises, of course, in a legal sense, founded on proper consideration, and of binding force as to each opposing party.

But, after all, a simple view of the effect of the accord contained in agreement A, when plainly laid before us, would seem to be sufficient to establish the position for which we have been contending. King agrees to deliver to Bremond & Van Alstyne 25,000 pounds of a certain style of leather in instalments on certain named days, in order to pay a certain debt. They agree, in the same terms, that " should King, (that is if King should) deliver to them said leather according to the terms of ' this ' contract, then, so soon as he shall have completed said delivery, they will release him from all liability for said sum of money due as aforesaid."

Now, King simply promises to deliver the leather, of a certain kind and quality, in certain portions, on certain days. The only

King v. Bremond.

reason stated for this promise, is to pay a debt he owed them. We have shown that the motive does not constitute, in legal sense, a consideration to make such a promise binding. It is no new consideration for this new promise. The obligation to pay the debt already existed, resting upon and exhausting its own consideration. They simply stipulate to discharge him from the debt if he should deliver, &c., in accordance with the contract, and when he shall have completed the delivery, &c. What do they here promise in the way of mutuality? Nothing; nothing, at least, but what follows as a legal consequence of payment. But, supposing there was a sufficient consideration moving to King, does he promise (taking both parts of his undertaking together) to deliver, &c., or does he not rather place himself in a position to be allowed to do so if he thought proper? Such is the construction which has uniformly been placed upon such stipulations. And do not defendants in error place themselves in a position to be unable legally to exact the delivery of the leather by the stringent terms in which they withhold the discharge, unless and until he shall have completed the delivery in accordance with the contract? If it had been the intention of the defendants in error to secure the delivery of the leather in substitution for the money, they could easily have contracted in a legal and binding way, by taking King's obligation for the delivery of the leather, based for its consideration upon a discharge of the pre-existing debt. That they did not do so, but, on the contrary, carefully kept the original debt in force, while they, in effect, agreed that he might discharge it in leather, proves that they intended still to rest upon the obligation and security of the former, and not to substitute a new one for it. If they intend to pile promise upon promise for the payment of the original debt, grounded upon no other consideration than its continued existence, we have seen, upon principle and authority, that this cumulating course is inadmissible. The court is referred for illustrating cases of promises like this held to be invalid, to the cases which we have cited for their principles.

2. As to the only remaining point, the failure of the petition to allege that the leather was of any value, and the recovery of

damage for its full value, we shall take it for granted that this was a fatal defect in the petition, and shall only inquire whether or not the defendant below has denied himself the benefit of this exception here by his course in regard to it below.   He did not specially point it out in his exceptions to the petition, nor did he object to evidence of the value going to the jury; but he did specially point out this defect in the motion in arrest, and also upon the motion for a new trial.

Upon a contract for the delivery of specific articles in a suit for its non-performance, it would seem that the value of the articles, the non-delivery of which is the ground of complaint, is so essential to the action, i. e. to the main purpose of it—the ascertainment and recovery of compensatory damages—as to trench upon the foundation of the action.   But the rule of decision on this point is laid down by this court in the case of Warren v. Bailey, 7 Tex., 518, and to that (as to our right to insist upon our last objection here,) we respectfully refer.   The defendants in error attempted to obviate our objections to their judgment by remitting in the court below, first $297, and then $1500.   But that cannot avail them, if, as we contend, they have mistaken their cause of action; for they have, then, tendered an immaterial issue, upon the trial of which we were not bound, if allowed, to present our true defence, and *non constat* that we would not have presented a good defence if they had gone upon a good cause of action.   See, also, the case of Hoggland v. Cothran *et al.*, decided at the present term from Lamar county.

*George F. Moore*, for the defendants in error.

BELL, J.—We think it unnecessary in this case to discuss the question whether or not the plaintiffs in the court below were entitled to maintain their suit on the contract of the 20th of July, 1852, for the failure on the part of King to deliver the leather. The plaintiffs were clearly entitled, upon King's failure to deliver the leather, to bring their suit to recover the amount which King acknowledged himself to be indebted to them.   We think the amended petition filed by the plaintiffs at the Fall Term,

King v. Bremond.

1854, is sufficient to entitle them to recover judgment for the money due them. That petition alleged the failure of King to pay the money, and prayed for such damages as the plaintiffs had sustained by his failure to pay said sum of money.

It is obvious that the jury arrived at the conclusion expressed in their verdict by estimating the twenty-five thousand pounds of leather at the highest price placed on it in the testimony, which was forty-five cents per pound; and by deducting the value of the 2117 pounds of leather which King had delivered. The verdict of the jury was for $10,297 35. Of this sum the plaintiffs remitted $1,797 35, thus reducing the amount recovered to $8500. The amount due the plaintiffs on the day on which the judgment was rendered, calculating interest at eight per centum, and deducting the value of the 2117 pounds of leather delivered by King, was about $8751. So that the remittitur entered by the plaintiffs reduced the amount which they recovered to a sum less than the sum due them by King by about $250.

In the view that we have taken of the case it does not become necessary to consider whether or not the value of the leather could be proved without any allegation of value in the petition of the plaintiffs. It may be remarked, however, that the defendant made no objection to the evidence to show the value of the leather, so far as we can ascertain from the record. It is true that the jury found their verdict for the value of the leather, but they might properly have found a verdict for the money due by defendant to the plaintiffs; and as the plaintiffs have remitted so much of the amount recovered as exceeds the amount which they might properly have recovered upon the pleadings and evidence, we think the justice of the case has been attained without any violation of law; wherefore the judgment of the court below is affirmed; and it is ordered that the defendants in error recover of the plaintiff in error the amount of the judgment in the court below less the amount remitted.

Judgment affirmed.